<u>NOT FOR PUBLICATION</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| TRACEY MATTA<br><br>  *Plaintiff,*<br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>  *Defendant.* | Case No. 3:19-cv-09574<br><br>**OPINION** |

**MARTINOTTI, DISTRICT JUDGE**

Before the Court is Plaintiff Tracey Matta's ("Matta") appeal from the final decision of the Commissioner of Social Security ("Commissioner"), denying her application for Social Security Disability Benefits. Having reviewed the administrative record and the submissions filed in connection with the appeal pursuant to Local Civil Rule 9.1, and having declined to hold oral argument pursuant to Federal Rule of Civil Procedure 78(b), for the reasons set forth below and for good cause shown, the Commissioner's decision is **AFFRIMED**.

**I.   BACKGROUND**

  **A.   Procedural History**

Matta filed an application for disability insurance benefits on September 24, 2015, alleging that he became disabled on April 16, 2013. Administrative Transcript ("Tr.") 12. Her date of last insured was December 31, 2013 (Tr. 371.)[1]  Her claim was initially denied on January 8, 2016.

---

[1] To qualify for disability insurance benefits, Plaintiff must show that her alleged disability occurred before her insured status expired. *See* 42 U.S.C. §§ 423(a), (c); 20 C.F.R. §§ 404.101(a), 404.131(a).

1

(*Id.*)  After timely requesting reconsideration from the Agency, her claim was again denied on March 7, 2016.  (Notice of Request for Reconsideration, Tr. 90-93.)

On May 3, 2016, Matta requested that an Administrative Law Judge ("ALJ") review her claim.  (Tr. 94.)  On December 14, 2017, that hearing took place in Newark, New Jersey before the Hon. Meryl Lissek. (Tr. 12; Hr. Trans., Tr. 24-66.)  Matta testified at that hearing and was represented by counsel.  (*Id.*)  Also testifying was Joseph Pearson, an impartial vocational expert.  (*Id.*)  On February 23, 2018, ALJ Lissek issued a decision concluding that Matta was not disabled within the meaning of the Social Security Act.  (Tr. 9-23.)

On April 23, 2018, Matta timely filed a Request for Review of the ALJ's decision to the Appeals Council. (Voorhees Letter, Tr. 145-46.)  On February 12, 2019, the Appeals Council denied Matta's Request for Review, at which point the Agency's decision became final. (Notice of Appeals Council Action, Tr. at 1-6.)  Her administrative remedies exhausted, Matta filed an appeal with this Court on April 11, 2019. (Compl. (ECF No. 1).)  This Court has jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

**B.  General Background**

Matta was 54 years old when she applied for disability insurance benefits.  (Tr. 149.)  Matta is high school educated and performed past relevant work as a customer service representative.  (Tr. 35, 168, 183-86.)  She alleged disability from arthritis in her left hand and right knee, a right leg length discrepancy, scoliosis caused by the discrepancy in leg lengths, fractured pelvis and left shoulder, osteoporosis, depression, and deafness in her left ear.  (Tr. 14.)  She has not engaged in substantial gainful activity since the alleged onset date through the date last insured on December 31, 2013.  20 C.F.R. § 404.1571.

## II.   STANDARD OF REVIEW

On a review of a final decision of the Commissioner of the Social Security Administration, a district court "shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g); *see Matthews v. Apfel*, 239 F.3d 589, 592 (3d Cir. 2001). The Commissioner's decisions regarding questions of fact are deemed conclusive by a reviewing court if supported by "substantial evidence in the record." 42 U.S.C. § 405(g); *see Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). This Court must affirm an ALJ's decision if it is supported by substantial evidence. See 42 U.S.C. §§ 405(g), 1383(c)(3). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S. Ct. 206, 83 L. Ed. 126 (1938)). To determine whether an ALJ's decision is supported by substantial evidence, this Court must review the evidence in its totality. *Daring v. Heckler*, 727 F.2d 64, 70 (3d Cir. 1984). However, this Court may not "weigh the evidence or substitute its conclusions for those of the fact-finder." *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992) (citation omitted). Accordingly, this Court may not set an ALJ's decision aside, "even if [it] would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999) (citations omitted).

## III.   THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS

Under the Act, the Social Security Administration is authorized to pay Social Security Insurance to disabled persons. 42 U.S.C. §§ 423(d)(1)(A), 1382(a). A claimant is "disabled" if she "is unable to engage in any substantial gainful activity by reason of any medically determinable

3

physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). A person is unable to engage in substantial gainful activity when her physical or mental impairments are "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B).

Regulations promulgated under the Act establish a five-step process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a); 20 C.F.R. § 416.920(a)(1). First, the ALJ determines whether the claimant has shown that he or she is not currently engaged in "substantial gainful activity." *Id.*; §§ 404.1520(b), 416.920(b); *see Bowen v. Yuckert*, 482 U.S. 137, 146-47 n.5, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987). If a claimant is presently engaged in any form of substantial gainful activity, he or she is automatically denied disability benefits. *See* 20 C.F.R. § 404.1520(b); see also Bowen, 482 U.S. at 140. Second, the ALJ determines whether the claimant has demonstrated a "severe impairment" or "combination of impairments" that significantly limits his physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c); *see Bowen*, 482 U.S. at 146-47 n.5. Basic work activities are defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1522(b). These activities include physical functions such as "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling." 20 C.F.R. § 404.1522(b)(1). A claimant who does not have a severe impairment is not considered disabled. 20 C.F.R. § 404.1520(c); *see also Plummer v. Apfel*, 186 F.3d 422, 427-28 (3d Cir. 1999).

Third, if the impairment is found to be severe, the ALJ then determines whether the impairment meets or is equal to the impairments listed in 20 C.F.R. Pt. 404, Subpt. P., App. 1 (the "Impairment List"). See 20 C.F.R. § 404.1520(a)(4)(iii). If the claimant demonstrates that his or

4

her impairments are equal in severity to, or meet those on the Impairment List, the claimant has satisfied his or her burden of proof and is automatically entitled to benefits. See 20 C.F.R. §§ 404.1520(d), 416.920(d); *see also Bowen*, 482 U.S. at 146-47 n.5. If the specific impairment is not listed, the ALJ will consider in his or her decision the impairment that most closely satisfies those listed for purposes of deciding whether the impairment is medically equivalent. See 20 C.F.R. § 404.1526(a). If there is more than one impairment, the ALJ then must consider whether the combination of impairments is equal to any listed impairment. *See* 20 C.F.R. § 404.1526(b)(3). An impairment or combination of impairments is basically equivalent to a listed impairment if there are medical findings equal in severity to all the criteria for the one most similar. *Williams*, 970 F.2d at 1186.

If the claimant is not conclusively disabled under the criteria set forth in the Impairment List, step three is not satisfied, and the claimant must prove at step four whether he or she retains the "residual functional capacity" ("RFC") to perform his or her past relevant work. *See* 20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f); *see also Bowen*, 482 U.S. at 141. Step four involves three sub-steps: (1) the ALJ must make specific findings of fact as to the claimant's RFC; (2) the ALJ must make findings of the physical and mental demands of the claimant's past relevant work; and (3) the ALJ must compare the RFC to the past relevant work to determine whether claimant has the level of capability needed to perform the past relevant work. *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 120 (3d Cir. 2000) (citations omitted). When determining RFC, "[a]n ALJ may reject a treating physician's opinion outright only on the basis of contradictory medical evidence, but may afford a treating physician's opinion more or less weight depending upon the extent to which supporting explanations are provided." *Hoyman v. Colvin*, 606 F. App'x 678, 679-80 (3d Cir. 2015) (quoting Plummer, 186 F.3d at 429). Unsupported diagnoses are not entitled to great weight.

5

*Jones v. Sullivan*, 954 F.2d 125, 129 (3d Cir. 1991). Moreover, an administrative law judge must provide the reason for providing more or less weight to the evidence. *See Fargnoli v. Massanari*, 247 F.3d 34, 42 (3d Cir. 2001).

The claimant is not disabled if his RFC allows him to perform his past relevant work. *See* 20 C.F.R. § 416.920(a)(4)(iv). However, if the claimant's RFC prevents him from doing so, an administrative law judge proceeds to the fifth and final step of the process. (*Id.*) The final step requires the administrative law judge to "show [that] there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and [RFC]." *Plummer*, 186 F.3d at 428. In doing so, "[t]he ALJ must analyze the cumulative effect of all the claimant's impairments in determining whether she is capable of performing work and is not disabled." (*Id.*) (citation omitted.)) Notably, an administrative law judge typically seeks the assistance of a vocational expert at this final step. (*Id.*) (citation omitted.))

The claimant bears the burden of proof for steps one, two, and four. *Sykes v. Apfel*, 228 F.3d 259, 263 (3d Cir. 2000). Neither side bears the burden of proof for step three "[b]ecause step three involves a conclusive presumption based on the listings." (*Id.* at 263 n.2) (citing *Bowen*, 482 U.S. at 146-47 n.5.)) The Commissioner bears the proof burden for step five. (*See id.* at 263.)

IV. **DECISION**

Matta makes six arguments contesting the Commissioner's final decision. Her first three arguments challenge the ALJ's decision on substantial evidence grounds. She claims the ALJ erred by classifying her past work as a customer service representative as a skilled position, erred in determining that her "communication skills" were transferable to other jobs, and failed include all of her impairments in hypotheticals presented to the VE at the hearing. (Tr. 12-14.) Her fourth

6

argument claims the ALJ failed to "adequately" consider treatment records from April 2013 through December 31, 2013. (Tr. 14-15.) She next argues that the matter should be revered and remanded because the ALJ did not consider her impairments in combination with Listing 14.09—Inflammatory Arthritis. (Tr. 15-17.) Finally, she avers that the ALJ erred by failing to ask the VE whether possible inconsistencies existed between the VE's testimony and the DOT pursuant to SSR 00-4p. While at times difficult to discern, Matta's arguments range from step-three to step-five objections. The Court addresses each of these arguments in turn.

### A. The Classification of Matta's Past Relevant Work

Matta first appeals the ALJ's determination in what appears to be a step-four argument. She claims the ALJ erred by classifying her past work as a customer service representative as a skilled position as defined by the Dictionary of Occupational Titles ("DOT") 241.367-014. (Pl.'s Br. in Supp. of App. (ECF 11) at 12 (citing Tr. 34)). Fundamentally, she argues that her position as a customer service representative should not have been classified as "skilled" work by the VE because the VE supposedly lacked necessary information about Matta's prior work. (*Id.*) She avers that the ALJ's classification was based solely on: (1) a "Work History Report" Matta completed and (2) the testimony she gave at the hearing "that it was a seated job on the telephone." (Hr. Trans., Tr. 34.) She complains that there was no development of the record that explains, for example, the types of "machines, tools or equipment" that she indicated she used on her Work History Report. (*Id.*) According to Matta, the record also does not contain "information whatsoever" about her daily work duties. (*Id.*) By "not request[ing] further information regarding the job functions or requirements" of the job, Matta argues the VE's testimony classifying her past-relevant work as skilled is not supported by substantial evidence." (*Id.*) The Commissioner contends the ALJ reviewed the vocational information provided by Matta including Matta's own

7

testimony describing her past work and properly considered that evidence. (Def's Br. (ECF 14) at 8). The Court rejects Matta's contention that the ALJ improperly categorized her past work as skilled. The argument is, ultimately, a red herring.

First, while Matta "indicated" that her job required the use of other machines, tools or equipment, she fails to argue here what those supposed items were. Beyond her reporting that she used a telephone and computer, nothing else was specified in the documents or testimony she provided. (Tr. 184.) In her Work History Report, when asked if she used "machines, tools or equipment," Matta answered "yes" and wrote "computer." (*Id.*) She also reported she performed customer service "by phone" and wrote "Data entry." (*Id.*) Notably, she did not identify any other items that she used during work. She also testified as to her then-daily work activities. She affirmed that her job was performed mostly in the seated position, using a telephone, applying technical knowledge and completing reports. (Tr. 34, 184-85.)

The ALJ found that Matta could not perform her past relevant skilled work as a customer service representative. However, the ALJ did find that Matta could perform the work of an Information Clerk, DOT 237.367.022, and characterized it as a "semi-skilled" position. (Tr. 19.) She makes no attempt to argue that she could not perform the work of an information clerk and instead complains her past relevant work—work the ALJ did not find she could perform any longer—was mischaracterized as skilled. Regardless, the VE affirmed that he had "adequate information" to characterize Matta's past work as performing the work of a customer service representative. (Tr. 35.) He noted that the job is "considered a skilled job . . . and rated at the sedentary level of exertion." (*Id.*) Matta did not question the VE's classification during the hearing. (Tr. 35-36.) The foregoing constitutes substantial evidence on which the ALJ based her decision on and credibly determined that Matta's past relevant work was skilled work. The ALJ's

8

explanation of the administrative record provides this Court with "more than a mere scintilla" of evidence to support her decision. *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004) (defining substantial evidence as "less than a preponderance of the evidence but more than a mere scintilla."). Therefore, the Court finds no error.

### B. Matta's Transferable Skills

Matta next contends that the VE erroneously testified that her communication skills were transferable to other jobs because such skills are "aptitudes common to most people" rather than skills she acquired while working as a customer service representative. (Pl's Br. in Supp. of App. (ECF 11) at 13-14.) The Court interprets this as a step-five argument. She submits that communication skills are aptitudes required for the vast majority of occupations in the national economy and not transferable vocational skills. (*Id.*) This argument, however, lacks merit.

"When a finding is made that a claimant has transferable skills: (1) the acquired work skills must be identified, (2) the specific occupations to which the acquired work skills are transferable must be cited, and (3) evidence that these specific skilled or semi-skilled jobs exist in significant numbers in the national economy should be included." *Gaddis v. Comm'r of Soc. Sec.*, 417 F. App'x 106, 107-08 (3d Cir. 2011) (citing SSR 82-41)). The ALJ here did just that.

The VE testified that Matta acquired "effective communication" skills as a customer service representative that are learned "by actually doing the work for a certain amount of time . . . most employers provide some type of training on how to effectively communicate with customers." (Hr. Trans., Tr. 64.) Matta performed customer service occupations at FedEx from September 1980 to March 2000 regarding "Shipping" services and Bristol Myers-Squibb from September 2000 to March 2007 regarding "[m]edical [p]roducts." (Tr. 32-34, 183.) She also performed a brief four-month customer service position at John Wiley & Sons—as a book

9

distributer—from April to August of 2008. (Tr. 183.) The VE testified that there were over 185,000 information clerk positions available in the national economy after eroding that number by twenty-five percent to account for Matta's hearing impairment. (Hr. Trans., Tr. 62; Tr. 19.)

The ALJ was entitled to rely on the VE's testimony and find that Matta's demonstrated communication skills and experiences translated to a semi-skilled, sedentary position as an Information Clerk, DOT 237.367.022. (Tr. 18-19.); *See* 20 C.F.R. § 404.1566(e); *see also* 20 C.F.R. § 404.1568(d)(1). The Court does not agree with Matta's argument that the record contains insufficient evidence "to sustain the VE's testimony." Her broad and unsupported assertion that communications skills are "required for the vast majority of occupations" lacks evidentiary support. Even if the Court finds the ALJ erred Matta does not allege how she was harmed by the supposed error. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009) (claimant bears burden of showing that an error was harmful)). She does not argue that she cannot communicate with customers in a customer service role or in the role as an information clerk. She merely disagrees with the ALJ's decision without pointing out how she was harmed. Accordingly, the Court finds no error in the ALJ's reliance on the VE's testimony, and her decision that Matta acquired transferable communication skills through her previous jobs is supported by substantial evidence. The ALJ's decision is sustained on this ground.

C. **The ALJ's Hypotheticals**

Matta's third argument challenges the hypothetical questions posed by the ALJ to the VE at the hearing. Specifically, Matta argues that the ALJ did not include her supposed struggles to maintain concentration, persistence, and pace "despite her testimony that her depression caused . . . lethargy in general" and impeded her ability to "handle customer calls quickly enough." (Pl's Br. in Supp. of App. (ECF 11) at 14) (citing Tr. 32, 45.))

The Third Circuit in *Rutherford v. Barnhart*, set the standard for hypothetical questions to vocational experts:

> [T]he directive in *Podedworny* is that the hypotheticals posed must "accurately portray" the claimant's impairments and that the expert must be given an opportunity to evaluate those impairments "as contained in the record." [...] Fairly understood, such references to all impairments encompass only those that are medically established. And that in turn means that the ALJ must accurately convey to the vocational expert all of a claimant's credibly established limitations.

399 F.3d 546, 553 (3rd Cir. 2005) (citations omitted). The "credibly established limitations" are those that are in the RFC determination and supported by substantial evidence. Despite Matta's contention that the matter should be remanded to consider her ability to maintain consistency, persistence, and pace while working, the record here shows that the ALJ's hypotheticals and decisional RFC reasonably incorporated any such limitation.

The ALJ addressed Matta's depression and ability to maintain concentration, persistence, and pace. (Tr. 16.) The RFC included Matta being off-task five percent of a workday and allowed one absence from work per month to account for her "symptoms of anxiety and depression." (*Id.*) The record is replete with reports from examining physicians indicating that Matta denied depression, anxiety, and describing her "good" mood. (Tr. 278, 281, 297, 301, 311, 1055.) These same reports described her as alert and oriented. (Tr. 240, 278, 281, 289, 297, 301, 312.) Reports note she displayed intact attention and concentration, memory, and normal executive functions "when asked to perform simple tasks." (Tr. 312.) The ALJ found Matta's mental impairments moderately limited her ability to concentrate, apply information, concentrate, persist, or maintain pace and showed no marked limitations in any of these areas. (Tr. 15.) Significantly, outside of referencing her testimony that she lacked energy due to depression, Matta does not argue that her mental depression causes marked or extreme limitations to meet the requirements of Listing 12.04.

11

The ALJ concluded that the evidence failed to establish the presence of "at least two 'marked' limitations or one 'extreme' limitation" required under the "paragraph B" criteria for Listing 12.04—Depressive Disorders. (Tr. 15.) The ALJ then explained that the RFC reflected "the degree of limitation the undersigned has found in the 'paragraph B' mental functional analysis." (Tr. 16.)

Also, the hypotheticals presented to the VE at the hearing and decisional RFC included Matta's credibly established limitations. In the third hypothetical she gave to the VE, the ALJ described a person performing work that did "not involve talking on a telephone. And based on pain and symptoms of depression and anxiety will be off task for five percent of an eight-hour day and absent once per month." (Hr. Trans., Tr. 63.) The VE testified that the information clerk job "would remain available within this RFC." (*Id.*) Despite Matta's arguments to the contrary, the foregoing demonstrates that the ALJ reasonably accounted for Matta's depression and ability to maintain concentration, persistence, and pace in the RFC. Her decision is based on substantial evidence and is, therefore, affirmed.

### D.     The ALJ's Consideration of Matta's Treatment Records—April 2013 through December 2013

Matta's next substantial-evidence argument claims the ALJ did not "adequately" consider treatment records from April 2013 through December 31, 2013—the last date of insured. (Pl.'s Br. in Supp. of App. (ECF 11) at 15). The substance of those treatment records, according to her, "clearly contradict" the ALJ's findings that Matta could sit for six hours and stand for two hours in an eight-hour workday. (*Id.*) The Court, however, disagrees.

First, the Court notes that Matta does not provide support for her argument. She does not cite to specific treatment records, nor does she explain how these uncited treatment records supposedly contradict the ALJ's findings. She does not explain why her alleged restrictions are

12

greater than the restrictions the ALJ found and included in the RFC. Nevertheless, the ALJ acknowledged Matta's complaints that she suffered pain in her hip and pelvis as reasons why she could not return to work. (Tr. 16-17.) The ALJ also explains that Matta reported "some difficulty" ambulating but that her daily activities included cooking simple meals, light cleaning, driving, shopping and engaging "in social activity." (Tr. 17.) The ALJ noted that Matta "estimated she could lift up to 15 pounds." (*Id.*) The ALJ also explicitly referenced medical documents detailing her hospitalization "for a fall in April 16, 2013, and suffered a left shoulder fracture and hip contusion." (*Id.*)

The ALJ then explained that "records indicate" Matta underwent surgery on her shoulder and reported that physical therapy resulted in "some gradual improvement." (*Id.*) Despite Matta's broad statement that the ALJ did not adequately consider her treatment records during the period in question, the ALJ found Matta's "pain persisted" and that she "developed stiffness in the left arm and numbness in her fingers." (*Id.*) Further undermining Matta's argument, the ALJ then gave little weight to the opinions of two State Agency medical consultants who concluded there was insufficient medial evidence to support a finding of disability "prior to the expiration of the Date of Last Insured of December 2013." (*Id.*) (citing Tr. 67-73, 75-81.)) The ALJ disagreed with the consultants and instead found that the medical evidence "supports severe musculoskeletal impairments." (*Id.*) Accordingly, the Court finds that the ALJ properly and adequately considered Matta's treatment records for the period in question. Her decision here is supported by substantial evidence and the Court will defer to her findings.

  E.  **Inflammatory Arthritis Under Listing 14.09**

For her next argument, Matta claims that had the ALJ combined her severe impairments against Listing 14.09, Inflammatory Arthritis, she would have met that listing. (Pl.'s Br. in Supp.

13

of App. (ECF 11) at 16). The Commissioner contends that the ALJ did not need to consider that listing and argues the record does not establish that Matta suffers from this "autoimmune disorder." (Def's Br. (ECF 14) at 17). *See* 20 C.F.R. Pt. 404, Subpt. P., App. 1, § 14.00A, D6. "Autoimmune disorders are caused by dysfunctional immune responses directed against the body's own tissues, resulting in chronic, multisystem impairments that differ in clinical manifestations, course, and outcome. They are sometimes referred to as rheumatic diseases, connective tissue disorders, or collagen vascular disorders." 20 C.F.R. Pt. 404, Subpt. P., App. 1, § 14.00A(2). For the claimant to show that her impairment matches a listing, she "must meet all of the specified medical criteria." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).

In general, Listing 14.09(D) covering inflammatory arthritis states:

> Clinically, inflammation of major peripheral joints may be the dominant manifestation causing difficulties with ambulation or fine and gross movements; there may be joint pain, swelling, and tenderness. The arthritis may affect other joints, or cause less limitation in ambulation or the performance of fine and gross movements. However, in combination with extra-articular features, including constitutional symptoms or signs (severe fatigue, fever, malaise, involuntary weight loss), inflammatory arthritis may result in an extreme limitation.

(20 C.F.R. pt. 404, Subpt. p App. 1, 14.00D(6)(a).)

The regulations further state that listing-level severity for 14.09(D) is shown by:

> various combinations of complications of one or more major peripheral joints or other joints, such as inflammation or deformity, extra-articular features, repeated manifestations, and constitutional symptoms or signs.

(20 C.F.R. pt. 404, Subpt. p App. 1, 14.00D(6)(e)(ii).)

While Matta points to Listing 14.09, she does not attempt to demonstrate that she meets the requirements of that listing. *See* 20 C.F.R. Pt. 404, Subpt. P., App. 1, § 14.09(A)-(D). She offers no support for her bare assertion that the ALJ should have considered Listing 14.09. There

14

is evidence, as the Commissioner points out, that cuts against Matta's argument. An examining rheumatologist in November 2015 did not find evidence "clinically or serologically" that Matta suffers from "rheumatoid arthritis, lupus, or any other autoimmune rheumatic disorder." (Tr. 887.) There is also evidence of consulting physicians who opined that Matta has a history of "significant" arthritis. (Tr. 274.) Other reports from examining physicians indicate that Matta had "mild tenderness" or "no tenderness or palpation" in her left hip, "pain with ROM (range of motion)", no joint instability and a "5/5" for strength. (Tr. 278, 281, 298, 302, 331-32.) Matta invites the Court to scavenge for evidence in the record she herself does not point to so that the evidence may be reweighed and applied to the requirements of 14.09. This the Court cannot do. *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992). Accordingly, Matta fails to meet her heavy burden of demonstrating that she meets the requirements of Listing 14.09.

### F. Whether Inconsistencies Existed Between the Vocational Expert's Testimony and the Dictionary of Occupational Titles

Matta's final argument fares no better. She claims the ALJ failed to ask the VE whether possible inconsistencies existed between the VE's testimony and the DOT pursuant to SSR 00-4p. The ALJ specifically "determined that the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles." (Tr. 19.) The VE made several references during his testimony to the DOT regarding the information clerk job. (*See* Tr. 35, 61-62.) Considering the DOT and evidence before him, the VE "eroded" the number of available information clerk positions nationwide by twenty-five percent to account for Matta's hearing loss. (Tr. 62.) Also, Matta does not allege that she was harmed by this supposed error. Besides arguing that the ALJ did not ask the VE whether conflicts existed between the VE's testimony and the DOT, Matta does not specify what those supposed conflicts are. In other words, even assuming Matta is correct, she does not claim that the outcome would have been different had the ALJ asked

15

this specific question.  It is not enough that Matta points to an error committed by ALJ; she must also show that she was harmed by the error.  *Shinseki*, 556 U.S. at 409-10 (2009); *see also Jackson v. Barnhart*, 120 F. App'x 904, 906 (3d Cir. 2005) ("[E]ven if it was error for the ALJ to fail to solicit testimony about potential conflicts between this portion of the VE's testimony and the DOT, the error was harmless.  Where substantial evidence supports the ALJ's opinion and where the failure to solicit the testimony contemplated in SSR 00-4p is harmless, this court will not reverse the ALJ's decision.").  Having earlier found that the ALJ's decision at step four is supported by substantial evidence, the alleged error here, at most, was harmless.  The Court will not disturb the ALJ's decision on this ground.

### III.   CONCLUSION

For the foregoing reasons, the determination of the Commissioner is **AFFIRMED.**

Date: March 31, 2021                                                 */s/Brian R. Martinotti*
                                                                     **HON. BRIAN R. MARTINOTTI**
                                                                     **UNITED STATES DISTRICT JUDGE**